PASTER and others, Copartners, Plaintiffs and Respondents, v. MUTUAL AUTO INSURANCE COMPANY, Defendant: BERG, Defendant and Appellant.

*April 5—May 3, 1960.*

For the appellant there was a brief and oral argument by *Frank L. Morrow* of Eau Claire, and *B. H. Schlosstein* of Cochrane.

For the respondents there was a brief by *Wilcox & Sullivan* of Eau Claire, and oral argument by *Arthur B. Sullivan.*

DIETERICH, J. The collision occurred at a point on Wisconsin State Highway 35 at the junction with what is known as "Markey Bluff road" about one mile south of the village of Nelson, Wisconsin. The town road does not cross Highway 35, but extends from it in a generally northeasterly direction.

At about 10:30 a. m., on the 23d day of September, 1957, the Chevrolet convertible of the Quality Chevrolet Company was being operated in a northerly direction along Highway 35 by the plaintiff, Melvin P. Paster. At about the same time the defendant, Iver Berg, was operating his automobile in a southerly direction on Highway 35 and approaching the automobile driven by plaintiff Paster.

The trial court submitted a special verdict to the jury and the jury found the defendant, Iver Berg, negligent and

such negligence causal in respect to lookout and yielding the right of way, and found no negligence with respect to his position on the highway.

The jury found Melvin Paster, the plaintiff, negligent, and such negligence causal as to lookout and management and control, and apportioned the negligence of Iver Berg, the defendant, at 40 per cent, and Melvin Paster at 60 per cent.

The jury allowed Melvin Paster, plaintiff, for his personal injuries the amount of $300, and the court, in its answering the question as to damages to the automobile, assessed them at $1,707.17, and medical expenses at $26.

The court allowed Iver Berg, defendant, damages to the automobile at $550, and medical expenses at $189.10, and the jury found personal injuries in the amount of $6,000.

The parties submitted motions after verdict and the court changed the answers of the special verdict as to comparison of negligence from 40 per cent and 60 per cent, respectively, to at least 50 per cent and not more than 50 per cent, respectively.

It was the plaintiffs' contention in the trial court that upon the trial court's conclusions as a matter of law it became necessary that the court grant a new trial. The trial court in its written memorandum stated: "The court did not come to such a conclusion and was not and is not attempting to assess a different percentage of negligence in that sense of the word. Perhaps it may seem that the court is making a distinction which may not appear to be present. Perhaps the court should have merely held that defendant's negligence was at least as great as that of plaintiff, and then have gone no further. That is actually what the court meant."

Palmer Peterson, called as a witness on behalf of the plaintiffs, stated that he is a traffic officer of Buffalo county. That

on September 23, 1957, he went to the scene of an accident between cars operated by Iver Berg and Melvin Paster about one mile south of Nelson, Wisconsin, on Highway 35, arriving within one-half hour after the accident. The Markey Bluff side road intersects with Highway 35 on only the east side. Highway 35 runs north and south, is black-top, with marked center line of yellow, with double yellow no-passing lines. The no-passing lines extended a mile to the south and three fourths of a mile to the north. Highway 35 has a slight grade and is rather "curvy." A person standing in the center of the intersection could see about 2,000 feet to the north and 700 feet to the south along Highway 35. The grade went down to the north. It was a clear day, with the highway dry. There was a four-foot dirt shoulder and a grassy ditch about two feet deep on each side of the highway. The front end of the Berg car was partly on the east shoulder, facing east, and the front end of the Paster car was all the way in the shallow ditch, facing east. The cars were near parallel.

When he arrived at the scene, the cars were generally on the east edge of Highway 35, north of the intersection of the north line of the town road. The defendant Berg's car was farthest to the north. It was 10 feet from the right front corner of the Berg car to the intersection. Highway 35 is 25 feet wide. He measured the skid marks left by the Paster car. There were two skid marks, both on the east side of Highway 35, with the right starting about three feet from the east edge of Highway 35. It was eight feet from the center line to where the left skid mark ended. There were no skid marks north of that point. The speed limit at the place of the accident was 65 miles per hour. Both skid marks started and ended about the same place. He measured the one farthest to the east, and it was 64 feet long. It was a black tire mark, and looked like a mark of a

wheel that had stopped. He looked for tire marks north of the place of collision and did not see any.

The plaintiff, Melvin P. Paster, testified as follows (abridged):

"I was driving a 1957 Chevrolet convertible owned by the partnership. I was alone. This accident happened between Alma and Nelson at about 10 a. m. It was a sunny day and the roads were dry. I remember the side road off of Highway 35 somewhere south of the village of Nelson. I was driving north on Highway 35. There was a curve south of the intersection and the curve is approximately one-half mile from the intersection. The curve comes from the east and then goes north. It is a long, sweeping curve. I was traveling between 50 and 60 miles per hour on this curve. There is a center line and two yellow lines on this long curve as described by the traffic officer. All three lines extend from this curve up to the intersection. There was no traffic ahead of me while I was traveling. As I approached the intersection I saw two large trucks come toward me from the north and immediately after that I saw Mr. Berg's car coming into my lane. It was just after I turned the curve and got out into the straightaway so to say. The trucks were 100 to 150 feet apart. I saw Mr. Berg as he was approaching the intersection about 50 yards from the intersection. Berg's car was north of the intersection and he was crossing the center line. I would say the front wheels were over the line. His left-hand-turn signal was on. The Berg car was 20 to 30 yards north of the intersection. The Berg car just kept coming across the highway. I attempted to turn off into the ditch. I thought perhaps if I would go to the right, he would be able to see me and we wouldn't have the accident. He was traveling at a slow rate of speed. As soon as I saw him I applied my brakes. I had power brakes, and they slow pretty fast. At

the point of impact, or before, I was traveling 15, 20 or 30 miles per hour. I wasn't watching the speedometer. I turned to the right. I got practically over on the east shoulder. My left front fender and left front grill and his same, came together, so that the cars met nearly head on. I had gone beyond the town road when I hit him. The cars met 10 to 20 feet north of the north line of the town road."

Iver Berg, defendant, testified as follows (abridged):

"The accident occurred about one mile from Nelson. I was following two trucks and making a left-hand turn to go out on that road to my home. I was making a left-hand turn on the town road to go home and in making this decision I drove up along the middle of the road and looked up the road and I crossed over right where I turned off. I never crossed over the center line until I got down to the north edge of the intersection. When I made this turn, these trucks were between 100 to 200 feet ahead of me. I turned on my turn signal back about 500 feet or more north of the intersection. I stayed on my side of the road in all of that 500 feet. I am sure that I never crossed the center line at all in this 500 feet from the time I put on the signal light until I got down to the north edge of the intersection. I didn't see Paster's car before the collision happened. There is a curve south of the crossroad."

Paul Johnson testified on behalf of the plaintiffs (abridged):

"I am a salesman and was in the vicinity of the accident. I was driving immediately behind Mr. Berg. There were one or two large trucks ahead of Mr. Berg. He didn't go over 40 miles per hour after leaving Nelson. I maintained the same speed behind him. As I was approaching that intersection from the north, he was driving carefully and evidently was going to make a left turn, because about 300 feet from the intersection he turned on his left-turn signals. This intersection is a road that turns to

the northeast. He slowed down more and when about 150 feet north of the intersection, he turned slowly into the east lane. It probably took him not over 50 feet to get into the lane and then he slowed down further yet. I slowed down. He was completely into the east lane. He must have been about 75 feet north of the intersection when he got completely into the east lane.

"I did not see the Paster car coming from the south. The Berg car was probably 200 or 300 feet behind those trucks when he got into the east lane. I was traveling in the right lane when Berg got into the east lane.

"I saw the Paster car about five seconds before the impact. I continued to watch it. I was getting a little frightened and pulled farther to the right. The short time I had, I would judge Paster was traveling between 50 and 60 miles per hour.

"The Berg car operated at a constant rate of speed until 300 or 400 feet before the intersection and then Berg started slowing down and at that time I would say about 300 feet from the intersection he put on his left-turn signal. The collision took place from 20 to 25 feet north of the north line of the intersection. When the two cars came together, the Berg car was on the east side of the road, with the left wheels probably right about at the east edge of the black-top, heading south. The Berg car at the time of the collision had not gotten off the black-top at all, nor made a turn into the town road. At the point of impact, the Paster car was headed north, parallel with the highway off the east edge of the black-top. The collision occurred right alongside of my car. I was on the west side of the road, going south, and was off the black-top slightly with one wheel a foot on the black-top. After the collision the cars were about 20 feet from the north line of the town road. Mr. Paster's car was closest to the town road. The front ends of the cars were practically together, with the back

ends three or four feet apart. The front ends were six to eight feet off the east edge of the black-top."

The testimony establishes that Paster at all times was in his own lane of traffic. He was driving upon a state trunk highway in a country area, and the speed limit was 65 miles per hour. The court submitted the proper question when it submitted the question of management and control for the reason that management and control would include the question as to speed with respect to the operation of the plaintiff's car immediately prior to the time that the collision occurred. *Culver v. Webb* (1944), 244 Wis. 478, 12 N. W. (2d) 731.

The testimony also discloses that the defendant Berg was in the process of making a left-hand turn across the path of the oncoming Paster car, and that the defendant Berg's car was the farthest to the north from the intersection after the collision—in fact it was 10 feet from the right front corner of the Berg car to the intersection.

The jury found the defendant Berg negligent as to lookout and in failing to yield the right of way. The jury found the plaintiff Paster guilty as to lookout and as to management and control.

We have held that one automobile accident case seldom, if ever, controls the decision in another as the facts are always different. *Topel v. Correz* (1958), 3 Wis. (2d) 495, 89 N. W. (2d) 295, and *Vandenack v. Crosby* (1959), 6 Wis. (2d) 292, 94 N. W. (2d) 621.

The legislature, as well as this court, has recognized the seriousness involved in making a left-hand turn in the face of oncoming traffic. The statute places an absolute duty of yielding the right of way in such cases. In this case the intersecting roadway was clearly visible to both the plaintiff and defendant.

The trial court in its memorandum opinion of March 20, 1959, stated: "The road onto which defendant Berg

intended to turn entered Highway 35 at an acute angle which necessitated the turn being made at a very slow rate of speed, and Berg certainly knew this since his home was located on this side road. Obviously plaintiff's car was not far distant and should have been in plain sight when Berg made the left turn. In the face of these circumstances it must be held as a matter of law that the negligence of defendant Berg was at least as great as that of plaintiff Paster."

The answers to questions 5 (a) and 5 (b) in which the jury apportioned the negligence at 40 per cent to Iver Berg and 60 per cent to Melvin Paster were changed by the court to at least 50 per cent and not more than 50 per cent, respectively, and then ordered judgment accordingly.

The court in its amended memorandum opinion under date of April 14, 1959, stated:

"Perhaps the wording of the previous memorandum opinion would seem to indicate that when it used the words 'at least' and found that the negligence of the defendant Berg was at least equal to that of the plaintiff Paster that the court was of the opinion that the defendant's negligence might be greater than 50 per cent and plaintiff's negligence less than 50 per cent."

The testimony in this case clearly establishes causal negligence as to lookout and yielding the right of way on the part of Berg, and the trial court was correct in determining the percentage of Berg's negligence as a matter of law was at least as great as the found causal negligence of the plaintiff Paster and, therefore, the counterclaim should be dismissed.

*By the Court.*—Judgment affirmed.